# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BELMONT PARTNERS, LLC, | CASE NO. 3:10-mc-00005 |
| *Plaintiff*, | |
| v. | ORDER |
| MINA MAR GROUP, INC., et al., | JUDGE NORMAN K. MOON |
| *Defendants*. | |

This matter is before the Court on Plaintiff's Motion to Confirm Arbitration Award (docket no. 1) and Motion for Sanctions (docket no. 31), and on Defendants' Motion to Suspend Arbitration Award and Compel Stock Transfer (docket no. 7), Motion to Vacate the Arbitration Award (docket no. 19), and request for sanctions contained within its Response in Opposition to Motion for Sanctions (docket no. 32).

The Court has fully considered the arguments and authorities set forth in the parties' filings, as well as those presented at the June 28, 2010 hearing. For the following reasons, the Court will grant Plaintiff's motion to confirm the arbitration award and will deny Defendants' motions to suspend and vacate the award. Further, the Court will deny both requests for sanctions.

## I. BACKGROUND

The parties to this dispute, Plaintiff Belmont Partners, LLC ("Belmont"), and Defendants Mina Mar Group, Inc. and Miro Zecevic (collectively "Mina Mar") are engaged in the business of buying and selling clean shell corporations. Belmont is a Virginia limited liability company,

1

which has its principal place of business in Washington, Virginia, and Joseph Meuse is its Managing Member. Mina Mar is a Canadian corporation with its principal place of business in Toronto, Ontario, Canada and Miro Zecevic is the President of Mina Mar and an individual residing in Toronto. Clean shell corporations "have no sales, no liabilities, and no assets. Their value comes from the fact that their shares can be readily traded and private operating companies can merge with [them] and 'go public.'" Mina Mar Mot. to Suspend Confirmation of Arbitration Award 1-2, Mar. 15, 2010 (docket no. 7).

In the instant dispute, Belmont and Mina Mar entered into three Common Stock Purchase Agreements ("CSPAs"), pursuant to which Belmont agreed to sell Mina Mar the stock of the following three clean shell corporations: Aztec Technology Partners, Inc., a public vehicle organized in the state of Delaware and traded under the symbol "AZTC" ("Aztec")[1]; King Resources, Inc., a public vehicle organized in the state of Delaware and traded under the symbol "KING" ("King"); and VShield Software Corporation, a company organized in the state of Delaware and traded under the symbol "VHSE" ("VShield"). Under the terms of the CSPAs, Mina Mar agreed to pay a total of $600,000[2] for a controlling block of stock in these companies ($200,000 for a controlling block in each company). *See* Belmont Pet. to Confirm Arbitration Award Exs. 1–3, Feb. 16, 2010 (docket no. 1).

After the parties entered into the three CSPAs, a dispute arose concerning the quality of the clean shell corporations and the parties' performance of obligations under the CSPAs. Mina Mar claimed, inter alia, that Belmont had never transferred the majority shares of stock in Aztec, King, and VShield to Mina Mar, as required by the CSPAs. Belmont claimed it had properly

---

[1] According to the Certificate of Amendment of Certificate of Incorporation issued by the State of Delaware on December 22, 2009, the name of Aztec was changed to Ultimate Lifestyle Corporation. I will refer to it as Aztec in this memorandum.
[2] The parties later agreed to reduce the sum to $540,000, according to a schedule of payments over a nine-month period.

transferred all stock required. As a consequence, Mina Mar only paid $75,000 as a deposit for the purchase price, rather than the full sum, and issued a press release allegedly disparaging Belmont.

      Each of the CSPAs contains an arbitration clause, which provides as follows:

> <u>Binding Arbitration</u>. In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the Parties hereto shall use their best efforts to settle the dispute, claim question [sic], or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such a solution within a period of sixty (60) days, then, upon notice by either party to the other, all disputes, claims, questions, or disagreements shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules including the Option Rules for Emergency Measures of Protection, and judgment on any award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

*See* Belmont Pet. to Confirm Arbitration Award Exs. 1–3.

      Belmont then filed a Statement of Claim with the American Arbitration Association's International Centre for Dispute Resolution, seeking the money allegedly owed it under the CSPAs for the purchase of Aztec, King, and VShield. Mina Mar counterclaimed for money damages and rescission of the CSPAs. Thereafter, the parties reached a settlement. Under paragraphs one to four of the Settlement Agreement, the parties agreed that 1) Mina Mar would issue a press release clarifying its earlier public statements regarding Belmont, 2) Belmont would keep the $75,000 already paid to it, 3) Mina Mar would return all interests in Aztec to Belmont, and 4) Belmont would dismiss the arbitration action. Further, the Settlement Agreement stated:

> Upon filing of these dismissals, and except for the obligations arising under this Agreement, the parties mutually and completely release each other from any and all claims and demands made or

> which could have been made . . . or which otherwise concerns the CSPAs or the Companies.

The Settlement Agreement did not end the dispute. Mina Mar refused to comply with the Settlement Agreement until Belmont transferred stock certificates totaling 50.001% of King and 51% of VShield. Mina Mar believed Belmont had promised, in pre-settlement email communications, to make those stock transfers. In response, Belmont filed a Request for Enforcement of Settlement Agreement and Award of Costs and Fees in the Arbitration, taking the position that the terms of the Settlement Agreement did not explicitly require any transfer of stock and released all other claims.

John Connolly, an arbitrator for the American Arbitration Association, International Centre for Dispute Resolution, entered an Award on January 11, 2010 in Alexandria, Virginia ("the Award"). The Award stated that "[w]ithin thirty (30) days from the date of transmittal of this Award to the Parties, [Mina Mar] will comply fully with the language set forth in paragraphs 1, 2, 3, and 4 of the October 23, 2009 Settlement Agreement between the Parties[.]" Further, the arbitrator held that "[t]his award is in full settlement of all motions, claims, and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied."

After the arbitration concluded, two separate proceedings commenced—one in Ontario and the other in this Court. Upon motion by Mina Mar, the Superior Court of Justice in Ontario ("Ontario Superior Court") recognized the Award in an order entered March 30, 2010. Mina Mar had also moved for an order to stay enforcement of the Award until Belmont completed the requested transfer of stock and for an order to vary the Award to require fulfillment of the terms of the Award within thirty days of the requested transfer of stock. The Ontario Superior Court denied both of those motions.

In this Court, Belmont filed a Petition to Confirm Arbitration Award (docket no. 1), which sought a judgment from the Court confirming and enforcing the Award pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997, *implemented at* 9 U.S.C. § 207 *et seq.*.

After the hearing before the Ontario Superior Court concluded, Mina Mar filed in this Court a Motion to Suspend Confirmation of Arbitration Award and to Compel Belmont to Transfer Control Blocks of Stock of the Subject Entities to Mina Mar (docket no. 7). After briefing on this Motion was complete, Mina Mar moved to vacate the arbitration award (docket no. 19). Belmont filed the instant Motion for Sanctions (docket no. 31).

## II. APPLICABLE LAW

This action arises under the New York Convention and the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The Federal Arbitration Act provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

The extent of federal judicial review of an arbitration award is "substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). In fact, the scope of judicial review for an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with

5

litigation." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007). The party moving to vacate "must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act." *Id.*[3]

Mina Mar seeks to vacate the Award pursuant to 9 U.S.C. § 10(a)(1), which provides that a court "may make an order vacating the award . . . where the award was procured by corruption, fraud, or undue means[.]" In order to prevail under that section, the movant must show that the corruption, fraud, or undue means was "not discoverable upon the exercise of due diligence prior to the arbitration" or during the arbitration, and that the corruption, fraud, or undue means "materially related to an issue in the arbitration." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010) (quoting *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992)); *see also RZS Holdings AVV v. PDVSA Petroleos S.A.*, 598 F. Supp. 2d 762, 771-772 (E.D. Va. 2009); *Switzer v. Credit Acceptance Corp.*, No. 5:09-cv-00075, 2010 U.S. Dist. LEXIS 7803, at *16, 2010 WL 424573, at *3 (W.D. Va. Jan. 27, 2010). Further, the movant must establish corruption, fraud, or undue means by clear and convincing evidence. *Id.*

"Undue means" has been interpreted to denote something akin to fraud or corruption. *See DataQuick*, 492 F.3d at 529; *Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 499 (1st Cir. 2005) ("The best reading of the term 'undue means' . . . is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either.").

---

[3] Because I find no merit to Mina Mar's claim under the Federal Arbitration Act, I need not address Belmont's contention that the New York Convention provides the exclusive grounds for review of the Award.

III. DISCUSSION

A. CLAIM PRECLUSION

Before I review the Award for corruption, fraud, or undue means, I must first consider whether Mina Mar's claim for relief has been precluded by the judgment entered by the Ontario Superior Court on Mina Mar's motion before that court to vary the Award.

The party invoking res judicata or claim preclusion "must establish three elements: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (quotation marks omitted).[4] A judgment which is unappealed is final for res judicata purposes. *Liu Hop Fong v. United States*, 209 U.S. 453 (1908).[5]

To determine identity of the cause of action, the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir. 1991). "Transaction" connotes "a natural grouping or common nucleus of operative facts" and court can consider "relatedness in time, space, origin, or motivation." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). The court need not find that the plaintiff is proceeding on the same legal theory he advanced in the first suit. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009). When the three prongs of the test are satisfied, the party is precluded from asserting "any legal theory, cause of action, or defense which could have been

---

[4] In cases brought under federal question jurisdiction, as here, federal courts apply federal res judicata principles to determine the preclusive effect of a prior judgment. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971).

[5] Even if an appeal has been filed, the pending judgment is final for res judicata purposes unless a party obtains a stay from either the rendering or enforcing court. *Guinness PLC v. Ward*, 955 F.2d 875, 898 (4th Cir. 1992).

7

asserted in that action." *Ohio Valley Envtl. Coal.*, 556 F.3d at 210 (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.10(l)(a) (3d ed. 2008)).

Comity is "the recognition which one nation allows within its territory to the . . . judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Courts of the United States "may choose to give res judicata effect to foreign judgments on the basis of comity, but are not obliged to do so." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (quotation marks omitted).

Comity should be granted to a decision or judgment of a foreign court if: (1) "the foreign court is a court of competent jurisdiction"; and (2) "the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard Steamship Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985) (citing *Hilton*, 159 U.S. at 202-03). Where the foreign jurisdiction gives full and conclusive effect to a judgment rendered by an American court, comity generally requires that the American doctrine of res judicata be applied to the foreign judgment. *See Flota Maritima Browning de Cuba, Sociadad Anonima v. Motor Vessel Ciudad de la Habana*, 218 F. Supp. 938, 942 (D. Md. 1963) (applying issue preclusion to a Canadian court judgment); *Hilton*, 159 U.S. at 227-28 (considering France's treatment of judgments rendered in America in decision whether to grant comity to judgment rendered in France).

The judgment of the Ontario Superior Court merits comity. The parties do not dispute that it is a court of competent jurisdiction and that recognition of its judgment would not violate the laws and public policy of Ontario or the rights of its residents. The parties themselves

provided in the CSPAs that "judgment on any award rendered by the arbitrator(s) may be entered *in any court* having jurisdiction thereof." (emphasis added) Furthermore, Canada is a signatory to the New York Convention, and the Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention, Art. III.

Thus, the Ontario Superior Court's judgment can have preclusive effect if it meets the three prongs of the res judicata test. The first question is whether the judgment is a final judgment on the merits. After considering the arguments on both sides and holding a hearing on the matter, the Ontario Superior Court entered an order resolving all of the questions before it—it confirmed the Award and dismissed Mina Mar's plea for a stay of the enforcement of the Award and for modification of the Award. The Ontario Superior Court provided the following reasons for its decision:

> The essence of the relief sought by Mina Mar was a variation of the Award. This court does not have jurisdiction to review or vary a final award of the Arbitrator. . . . Mina Mar is attempting to vary the terms of the settlement agreement. This court has no jurisdiction to impose additional terms on the basis of Mina Mar's alleged mistaken belief . . . . This court cannot intervene to rectify Mina Mar's oversight.

*Mina Mar Group Inc. v. Belmont Properties LLC*, No. CV-09-381678, at ¶ 11 (Ont. Sup. Ct. Mar. 26, 2010).[6]

Mina Mar is of the view that this language signifies that the court relinquished the claim for lack of jurisdiction. I disagree. On the issue of varying the Award, the court deferred to the decision of the arbitrator, which was reached after full consideration of both parties' arguments

---

[6] The court also cited res judicata as a secondary reason for its decision. *Mina Mar Group*, No. CV-09-381678, at ¶ 15. The basis for applying res judicata is a variation of the central rationale for the opinion: that the "court has no jurisdiction to alter or interfere with the terms of the Award." *Id.* In any case, the court reviewed and ruled upon the substance of the request for modification.

9

and evidence. The court's decision to decline to modify the terms of the Award was an application of the narrow scope of review provided by Canadian law to Mina Mar's plea for relief. In short, the court viewed Mina Mar's motion to vary the Award to be without merit. On the issue of the stay requested by Mina Mar, the court held that "[t]here was no basis for the stay of enforcement that I could discern on the record." *Mina Mar Group*, No. CV-09-381678, at ¶ 17. Further, the court undeniably exercised its jurisdiction when it confirmed the Award; as part of that confirmation, it implicitly denied any modification of the Award.

Mina Mar separately argues that a motion to confirm is a summary proceeding, not a ruling on the merits that has preclusive effect. I need not address this argument, as the proceedings before the Ontario Superior Court included Mina Mar's motion to stay enforcement of the Award until Belmont transferred the stock and to vary the terms of the Award, in addition to the motion to confirm. *Mina Mar Group*, No. CV-09-381678, at ¶ 1. These issues required a review of the merits of the parties' arguments and the facts of the case.

Finding that the Ontario Superior Court's judgment was a final decision on the merits, I turn to the second prong, which is whether there is an identity of the cause of action between the suit in Ontario and the present suit. Mina Mar sought from the Ontario Superior Court 1) "an order staying the enforcement of the Award until the completion of the transfer of certain securities by Belmont to Mina Mar" and 2) "an order varying the Award to provide that the terms of the Award be completed within 30 days of the transfer of the said certain securities." *Mina Mar Group*, No. CV-09-381678, at ¶ 1. Both motions essentially sought to enlist the court in directing Belmont to transfer to Mina Mar the majority stake in King and VShield stock. The basis for these claims arose out of the original purchase of the three corporations by Mina Mar, the dispute over whether the Settlement Agreement required Belmont to transfer stock in King

and VShield to Mina Mar and whether Belmont ever effectuated the transfer, and the terms of the Award.

In the present pleadings, Mina Mar's claims arise out of the same series of transactions as did its motions before the Ontario Superior Court. *See Meekins*, 946 F.2d at 1058. Here, Mina Mar has 1) moved to suspend confirmation of the Award and to compel Belmont to transfer control blocks of stock of King and VShield to Mina Mar, and 2) moved to vacate the Award under 9 U.S.C. § 10(a) on the grounds that the Award was procured by fraud or undue means. Regarding the first claim, the motion to compel the transfer of stock seeks the same relief Mina Mar sought before the Ontario Superior Court: the transfer of the stock in King and VShield from Belmont to Mina Mar. Mina Mar's present plea contains substantially the same factual allegations as were reviewed by the Ontario Superior Court. This common nucleus of operative facts includes the purchase of the corporations, the disputed Settlement Agreement, and the terms of the Award.

Although no motion to vacate was brought in the prior proceeding, the plaintiff need not proceed on the same legal theory as in the first suit. *See Ohio Valley Envtl. Coal.*, 556 F.3d at 210. Rather than seek to vacate the Award, however, Mina Mar did seek to vary it to achieve the same objective for which it now seeks vacatur—to avoid compliance with the Award without a guarantee of receiving stock in King and VShield. The underlying legal right—Mina Mar's property interest in the stock—and the motivation for bringing the claims are identical. *See Pittston*, 199 F.3d at 704 (finding a court can consider relatedness in origin or motivation). The source of the fraud or undue means, as alleged by Mina Mar, are representations made by

Belmont to the arbitrator that Belmont had transferred the stock in King to Mina Mar.[7] Mina Mar seeks to relitigate the same dispute over the transfer of stock and its effect on the terms of the Award that the Ontario Superior Court heard and decided.

Further, a motion to confirm an arbitration award and a motion to vacate an award are closely related. *See Sanluis Devs., L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008) (stating that the "two motions submit identical issues for judicial determination"). Several courts have held that a party objecting to a motion to vacate must raise those objections in the proceeding on the motion to vacate, or else the objecting party is precluded from later seeking confirmation of the arbitration award. *See*, *e.g.*, *Maidman v. O'Brien*, 473 F. Supp. 25, 27 (S.D.N.Y. 1979) (construing motion to dismiss a proceeding to vacate arbitration award as implicitly seeking confirmation of award); *General Elec. Co. v. Anson Stamping Co.*, 426 F. Supp. 2d 579, 594-95 (W.D. Ky. 2006). While the posture in this case is different—the motion to confirm preceded the motion to vacate, and both motions were brought by the same party—the aforementioned cases illustrate that the question of the validity of an award is raised on a motion to confirm as well as on a motion to vacate. Mina Mar raises identical issues of the Award's validity, based on the same series of transactions, in this proceeding as it did when it first moved to confirm and vary the award.

The third and final prong of the res judicata analysis is whether the dispute before the Ontario Superior Court was between the same parties as the present action. There is no question that it was. Thus, claim preclusion bars this Court from deciding whether to modify or vacate the Award.

---

[7] Mina Mar's allegations that Belmont had failed to transfer the VShield stock to Mina Mar, set forth in Mina Mar's motion to suspend confirmation of the Award, were dropped in Mina Mar's motion to vacate because the VShield stock was located by Mina Mar.

B. CHALLENGE TO THE AWARD

Mina Mar challenges the validity of the Award, arguing that the Award was procured by fraud or undue means and should be vacated. Even if Mina Mar's challenge was not precluded by the Ontario Superior Court judgment, I find it to be without merit.

Of the many alleged misrepresentations made by Belmont over the course of its dealings with Mina Mar, only one statement identified by Mina Mar could possibly constitute fraud or undue means by which the Award was procured, and I will limit my discussion to that instance. Mina Mar alleges that Belmont perpetrated a fraud upon the Arbitrator when counsel for Belmont represented to the Arbitrator during the arbitration hearing that "the stock had been transferred." The Arbitrator allegedly stated in response, "Belmont says they sent the stock." Mina Mar asks this Court to infer from this exchange that the Arbitrator "was operating under the assumption that Belmont had done what [Belmont's counsel] had said Belmont had done and what the Settlement Agreement assumed had been done, *i.e.*, transfer control blocks of stock of [King, Aztec, and VShield] to Mina Mar." Mina Mar Mem. in Support of Mot. to Vacate 7, Apr. 14, 2010. Mina Mar maintains that Belmont's statement was false, and that Belmont never in fact transferred the stock.[8]

Assuming *arguendo* that Belmont's statement regarding transfer of the stock was false, Mina Mar has failed to show by clear and convincing evidence that the fraud was not discoverable prior to or during the arbitration proceedings. The question of whether the stock had been transferred was a disputed fact in the arbitration proceedings and was briefed on both sides. The status of the stock was clearly presented to the arbitrator as being at the center of their disagreement. *See* Mina Mar Answer and Mot. of the Defs. Regarding the Enforcement of Settlement Agreements 1-2, Dec. 3, 2009 (stating that "[t]he motion is for . . . an Order: [t]hat

---

[8] Apparently, the stock for VShield had been delivered to Mina Mar but misplaced. *See* note 7, *supra*.

Belmont . . . will forward to Mina Mar . . . all stock certificates of King [and VShield]"); Zecevic Aff. ¶ 50, Dec. 3, 2009 (stating that Belmont took the position that "they have transferred the requisite number of shares of [King] and [VShield] (which my Mina Mar [sic] denies"). Moreover, if one assumes that Belmont's statement was false, then Mina Mar knew of the allegedly true facts prior to the arbitration. *See Walnut Street Secs., Inc. v. Lisk*, 497 F. Supp. 2d 714, 723-24 (M.D.N.C. 2007) (rejecting claim that arbitration award was procured by fraud because party alleging fraud knew of truth prior to arbitration).

Given the close attention paid to the issue of the stock transfer in the arbitration proceedings, I find it difficult to see how any alleged misrepresentations were not discoverable during the arbitration. The arbitrator was well aware of the contentions on both sides regarding the possession of the stock when he rendered the Award. Mina Mar's motion constitutes "nothing more than an attack on the witness's credibility and the arbitrator's assessment of it." *Switzer*, 2010 WL 424573, at *4. In sum, I find no basis for vacating the Award because of fraud or undue means.

Mina Mar points to no other legal basis for suspending or vacating the Award. To the extent that in its motions Mina Mar argues for suspension or vacatur of the Award on grounds other than 9 U.S.C. § 10(a)(1), those arguments are denied. The scope of the Court's review of an arbitration award is "substantially circumscribed" and does not extend to bases unrecognized in the law. *Patten*, 441 F.3d at 234.

Belmont petitioned this Court pursuant to 9 U.S.C. § 207 for an order confirming the Award. As explained above, there is no basis for vacating, suspending, or modifying the Award. Acknowledging that the Ontario Superior Court validly confirmed the Award and its judgment

14

should be recognized here, and that the Award was rendered in Alexandria, Virginia, this Court grants Belmont's petition and confirms the Award.

### C. RULE 11 SANCTIONS

Belmont moved the Court to impose sanctions under Federal Rule of Civil Procedure 11 on counsel for Mina Mar for factual misrepresentations Mina Mar made about the delivery of the stock. In its opposition to the motion for sanctions, Mina Mar in turn requested Rule 11 sanctions against counsel for Belmont based on alleged factual misrepresentations made by Belmont in its motion for sanctions. Upon review of the parties' submissions, I find that both requests for sanctions under Rule 11 must be denied.

Rule 11(b) provides in pertinent part:

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support . . . or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or . . . are reasonably based on lack of information or belief.

Fed. R. Civ. P. 11(b).

The primary purpose of Rule 11 is to "deter future litigation abuse." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (quoting *In re Kunstler*, 914 F.2d

505, 522 (4th Cir. 1990)). When determining whether Rule 11 sanctions should be imposed, this Court applies an objective test of reasonableness. *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F.2d 953, 955-56 (4th Cir. 1990). The proper inquiry is whether "a reasonable attorney in like circumstances would believe his actions to be factually and legally justified." *Id.* at 956. Counsel need not be correct in their legal argument; counsel need only be reasonable. *Miltier v. Downes*, 935 F.2d 660, 664 (4th Cir. 1991).

The first issue is whether Mina Mar's motion to suspend confirmation of the Award and vacate the Award were improper attempts to relitigate questions already decided by the Ontario Superior Court, causing unnecessary delay and needlessly increasing costs. "An improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings." *Reaves v. Roanoke Redev. & Hous. Auth.*, No. 7:08-cv-00560, 2009 U.S. Dist. LEXIS 10703, at *20, 2009 WL 366045, at *7 (W.D. Va. Feb. 12, 2009) (unpublished) (quoting *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998)); *see also St. Amant v. Bernard*, 859 F.2d 379, 384 (5th Cir. 1988) ("Repeat litigation of identical claims over identical subject matter may support an inference that the litigation was meant to harass opposing parties."). Rule 11 sanctions may be appropriate where a party files a claim barred by res judicata. *See Reaves*, 2009 U.S. Dist. LEXIS 10703, at *19 (citing *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989); *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

Narrow grounds for vacating or modifying the final decision of an arbitrator exist under the New York Convention and the Federal Arbitration Act. Mina Mar first sought such modification in the Ontario Superior Court, where it was denied. Mina Mar then filed the motions to suspend confirmation and vacate the Award in this Court, presenting slightly different

arguments on the same set of facts. Although I hold that claim preclusion prevents relitigation of the challenge to the Award, and in any case the substance of the challenge does not justify vacating the Award, I do not find that Mina Mar's suit was brought for an improper purpose. Mina Mar had an objectively reasonable basis for arguing that the Ontario Superior Court's decision was based on jurisdiction and thus did not fall under res judicata. Further, Mina Mar's contentions that Belmont's alleged misrepresentation to the arbitrator regarding the transfer of stock were fraudulent were not so unreasonable as to fall into the realm of sanctionable conduct.

The second issue is whether either party's factual contentions lack sufficient evidentiary support. Only factual allegations that are wholly "unsupported by *any* information obtained prior to filing" will fail to satisfy Rule 11(b)(3). *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). "Only the lack of any legal or factual basis is sanctionable." *Hunter*, 281 F.3d at 153 (citing *Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir. 1990)).

Whether or not Belmont had properly transferred controlling shares in the stock of the three corporations to Mina Mar has been a hotly disputed issue over the course of the arbitration proceedings, the motions before the Ontario Superior Court, and the motions before this Court. The factual narrative presented by each party has often conflicted with the other party's version, and each party now claims that the other's representations lacked evidentiary support in violation of Rule 11. The arbitrator heard factual allegations that are nearly identical to those brought in the present litigation, and resolved them in its Award. Award of Arbitrator, Jan. 11, 2010 ("This award is in full settlement of all motions, claims, and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied."). However, the arbitrator did not make specific findings of fact against which the veracity of the statements made in the instant proceedings can be measured. It is not this Court's role, upon review, to determine facts already

decided by the arbitrator. I have reviewed the briefing and exhibits submitted by both parties, and after due consideration, conclude that no statements made by either party are so lacking in support as to merit sanction.

One specific allegation of factual inaccuracy deserves brief comment. In its motion before this Court to suspend confirmation of the Award, Mina Mar represented that it had not received transfers of stock in any of the three corporations, and could not determine the whereabouts of the stock. Mina Mar Mot. and Mem. ¶¶ 32-33, Mar. 15, 2010. In its later motion to vacate, Mina Mar stated that based on information provided by Belmont after the motion to suspend confirmation was filed, it was able to locate the VShield stock certificates, which had previously been mailed to Mina Mar but accepted by a building employee who never physically brought the package to Mina Mar. Mina Mar Mem. in Support of Mot. to Vacate ¶¶ 59-61, Apr. 14, 2010. Apparently, Mina Mar's contention that Belmont had never delivered the VShield stock was inaccurate. The record does not reveal that Mina Mar's contention was wholly unsupported by any evidence, or that reasonable investigation had not been made to locate the certificates. Mina Mar appears to have been genuinely confused about the location of the VShield stock, and once it learned of the stock's location, it informed the Court of this change in circumstances in its brief. Despite being ultimately incorrect, Mina Mar's claims regarding the VShield stock do not mert sanction.

All applications for sanctions are denied.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Belmont's motion to confirm the Award, and will deny Mina Mar's motions to suspend and confirm the Award, and both parties'

requests for sanctions. Mina Mar must comply with the terms and conditions of the Arbitration Award. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this __1st__ day of October, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE